UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONICA DEVINE,<br><br>                Plaintiff,<br><br>      vs.<br><br>GEICO GENERAL INSURANCE COMPANY,<br><br>                Defendant. | Civ. No. 12-CV-5889 (ADS) (AKT) |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

Christopher Q. Davis (CD7282)
Stoll, Glickman & Bellina, LLP
*Attorneys for Plaintiff Monica Devine*
475 Atlantic Avenue, Third Floor
Brooklyn, NY 11217

# TABLE OF CONTENTS

STATEMENT OF FACTS..................................................................................................1

ARGUMENT......................................................................................................................3

I.    Plaintiff's Complaint States a Claim of Discrimination Based on Linguistic
Characteristics Identifiable With Her National Origin.............................................3

    A.    Legal Standard..............................................................................................3

    B.    Plaintiff Has Presented Direct Evidence Sufficient to Support an Inference of
National Origin Discrimination ...................................................................6

    C.    Plaintiff Has Presented Sufficient Evidence to Demonstrate Her Qualifications
For The Promotions She Was Denied.........................................................10

    D.    Defendant's Reliance on The Business Judgment Rule is Misplaced.........12

II.    Plaintiff's Section 1981 Claim Based on National Origin is Properly Pled...........13

## STATEMENT OF FACTS

Defendant Government Employees Insurance Company's ("Geico" or "Defendant") motion manipulates the law and facts relevant to Plaintiff's entirely legitimate claim, making use of bits and pieces which, when quoted out of context, almost seem persuasive. A careful examination reveals the exact opposite – there is virtually no support for Defendant's position legally or factually. The unprocessed and largely uncontested facts present a remarkably simple and compelling case of national origin discrimination: Between 2001 and 2012, Plaintiff was denied 5 separate promotions for positions within GEICO's Human Resources Department, the last two explicitly because of her accent and because of her direct supervisors' wholly unfounded concern in a "language barrier" which did not exist. After she was denied a position for the fifth time, she was demoted from an interim position in the HR Department also because of her accent. Setting aside the uniformly distinguishable precedent Defendant relies upon, the court has found an inference of discrimination has been in nearly every instance of similar allegations. Defendant avoids this precedent for many reasons, not the least of which is that Your Honor is one of the jurists who has previously found an inference of discrimination under nearly identical circumstances in *Lieberman v. Brady*, 926 F. Supp 1197, (E.D.N.Y. 1996). More importantly, Defendant has not, and cannot, present any evidence that Plaintiff has ever *actually* been misunderstood by one of Defendant's customers or by a candidate for employment, let alone that she has "pronunciation" problems, "speaks too fast," or that she is non-English speaking as the term "language barrier" implies, because she was never given the chance to perform in-person interviews in an HR role as she desired. Regardless, her English is readily capable of being understood. In fact, her English is *commendable,* a fact Defendant's recognized in awarding her for excellence in her communication skills when she worked in one of Defendant's call centers.

1

As such, Defendant's ill-advised motion to dismiss is utterly devoid of any merit and, given that it concedes that the adverse actions Plaintiff suffered were the directly influences by her protected characteristics, will likely be an exhibit in Plaintiff's motion papers at all future points in the litigation. .

As mentioned, the material facts are not in dispute. Plaintiff has been employed with Defendant for over 12 years. *See* Docket Entry No. 1, Plaintiff's Complaint, at ¶¶ 2,6. Her first job with Defendant was as a customer representative in one of Defendant's regional call centers where she was praised for her communication skills and routinely ranked in the top quartile of those in her job category. *Id.* at ¶ 9. Ms. Devine's first run-in with discrimination at GEICO was when she was demoted in 2000 by a manager outside of the HR Department because of her foreign education and accent. *Id.* at ¶ 12. Since then, she has applied for five jobs in the HR Department, the last two explicitly because of her accent. *Id.* at ¶¶ 13-16. Rick Hass, the supervisor who refused to promote Plaintiff in both of her final two interviews, stated unequivocally that he was doing so because of Plaintiff's accent, which he described as presenting a "pronunciation" issue. *Id.* According to Hass, his concern stemmed from a fear that she would not be understood by candidates for employment and the possibility that she may "speak too fast" and impact their impression of the company. *Id.* at ¶¶ 14-16.

After she complained to HR about Hess, she was offered a lateral position as an e-recruiter in the HR Department under Robert Grassi. *Id.* at ¶ 19. Despite being led to believe that she would be given an opportunity to conduct in-person interviews of candidates if she focused on addressing her accent, Grassi expressed immediate concern, indicating that he was concerned she would speak too fast in interviews. *Id.* Grassi told Plaintiff that he was speaking for the entire HR Department, and that the general consensus was that her "fast talking" would

2

leave a negative impression with candidates for employment. *Id.* Despite this, Grassi offered to keep an open mind about Plaintiff's candidacy for higher-level roles if Plaintiff attempted to improve her communication skills. *Id.* at ¶ 20. After only a month, Plaintiff was told by Grassi that she was being demoted and involuntarily transferred because of errors she had made. *Id.* Upset, Plaintiff later met with Grassi and showed him proof that the errors he was faulting her for were not actually errors, at which point Grassi confessed that his real motive related to her accent, stating, "I am concerned with a language barrier – it's a matter of your accent." *Id.* While Grassi's reference to a "language barrier" implied that Plaintiff was *incapable* of communicating in English, this is far from the truth; Plaintiff is unquestionably fluent, and her English is clear and pleasant, a proficiency which was previously considered to be an asset to Defendant while Plaintiff was employed in the call center. *Id.* at ¶ 21. As such, her accent did not materially interfere with her ability to perform any of the duties associate with the positions she applied for. *Id.* at ¶ 22.

## ARGUMENT

## POINT I

## PLAINTIFF'S COMPLAINT STATES A CLAIM FOR DISCRIMINATION BASED ON LINGUISTIC CHARACTERISTICS IDENTIFABLE WITH HER NATIONAL ORIGIN

### A. Legal Standard

Under federal "notice" pleading, a complaint asserting an employment discrimination claim need not plead specific facts establishing a prima facie case of discrimination in order to survive a motion to dismiss. *See Peterson v. Long Island R.R. Co.*, No. 10–CV–480, 2010 WL 2671717, at *2 (E.D.N.Y. June 30, 2010). Instead, a plaintiff need only show that his or her

3

claims are plausible by pleading facts sufficient to state a claim to relief that is plausible on its face. *See Boykin v. KeyCorp*, 521 F.3d 202, 212 (2d Cir.2008). Further, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is an evidentiary standard, not a pleading requirement, and does not impose a greater obligation than that required by Rule 8(a)'s simplified notice pleading. *Id.* Further, a plaintiff's burden of establishing a prima facie case of employment discrimination is *"de minimis."* See *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994).

Contrary to Defendant's assertion, under a notice pleading system, the *McDonnell Douglas* framework does not apply in every employment discrimination case and, therefore, pleading the elements of each claim is not a requirement. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) ("The *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination"). Plaintiff's matter is illustrative. Since Plaintiff is able to produce direct evidence of discrimination, she may prevail without proving all the elements of a prima facie case. *See In re Rodriguez*, 487 F.3d 1001, 1008 100 (6th Cir. 2007) (holding that comments regarding an employee's accent made by a decision maker are best characterized as direct evidence of national origin discrimination). If a plaintiff is able to provide some evidence sufficient to support a plausible claim that an "illegitimate factor played a motivating or substantial role" in her firing, a plaintiff satisfies their pleading burden and may bypass the requirements of *McDonnell Douglas* altogether. *See Lieberman, supra*, 926 F. Supp 1197, 1202 *citing Tyler v. Bethlehem Steel Corp.* 958 F.2d 1176 (2d Cir. 1992); *See also Grant v. Hazelett Strip-Casting*, 880 F.2d 1564, 1568 (2d Cir.1989).

Notwithstanding Defendant's assertion that accent and national origin are mutually exclusive, the great majority of courts presume the modest "inferential leap" necessary to

4

associate accent and national identity, or otherwise find that such an inference is unnecessary. *See Fragante v. City and County of Honolulu*, 888 F.2d 591, 596 (9th Cir.1989) ("[a]ccent and national origin are obviously inextricably intertwined in many cases."); *Rivera v. Baccarat, Inc.*, 10 F.Supp.2d 318, 324 (S.D.N.Y.1998) ("[N]ational origin discrimination includes 'the denial of employment opportunity because ... an individual has the ... linguistic characteristics of a national origin group.'"). This practice is consistent with EEOC regulations which define national origin discrimination as including "the denial of equal employment opportunity because ... an individual has the ... linguistic characteristics of a national origin group." *See* 29 C.F.R. § 1606.1.

Further, Defendant's assertion that the "job related business judgments" of Plaintiff's supervisors in failing to promote her because of her accent cannot support a plausible inference of discrimination is incorrect as a matter of law. Far from implicating "speculation" requiring an "inference" of discriminatory intent, criticism of linguistic characteristics associated with a national origin group, standing alone, *can* provide the basis of a national origin claim if the characteristic in question does not materially interfere with job performance. *See Fragante*, 888 F.2d at 596. ("[a]n adverse employment decision may be predicated upon an individual's accent when— but only when—it interferes materially with job performance." *See also Carino v. University of Oklahoma Board of Regents*, 750 F.2d 815, 819 (10th Cir.1984) (plaintiff with "noticeable" Filipino accent improperly denied position where accent did not interfere with ability to perform tasks); *Berke v. Ohio Department of Public Welfare*, 628 F.2d 980, 981 (6th Cir.1980) (employee improperly denied two positions because of accent); *Liberman v. Brady*, 926 F.Supp. 1197, 1207–11 (E.D.N.Y.1996) (supervisor's remark that employee should not man front desk because "people would possibly be offended because of his accent" showed discriminatory intent); *Hernandez v. Jackson, Lewis, Schnitzler & Krupman*, No. 96 Civ. 8540,

5

997 F.Supp. 412, 1998 WL 84611, at *6 (S.D.N.Y. Feb.25, 1998) (holding that plaintiff's allegation that her employer informed her "that she would never be promoted because of her 'thick accent'" raised a genuine issue of material fact with respect to the question of whether she was the victim of unlawful discrimination based on national origin); *Rivera v. Baccarat*, No. 95 Civ. 9478, 1997 WL 400119, at *4 (S.D.N.Y. July 15, 1997) (declining to grant summary judgment because there existed evidence that one of the defendant's employees was critical of the plaintiff's accent and had input into the decision to terminate her employment); *Boakye–Yiadom v. Laria*, No. 09 CV 622, .2012 WL 5866186, at * 5; (E.D.N.Y. Nov. 19, 2012); *Altman v. New York City Dept. of Educ.*, No. 06 CV 63192007, WL 1290599 * 4,5 (S.D.N.Y. May 1, 2007); *Meng v. Ipanema Shoe Corp.*, 73 F.Supp.2d 392, 399 (S.D.N.Y.1999).

B. **Plaintiff Has Presented Direct Evident Sufficient to Support an Inference of National Origin Discrimination**

Plaintiff alleges in her Complaint that she was denied two promotions, demoted and transferred to an undesirable position at the hands of two different managers who did so explicitly because of her accent. Comments such as these which could be viewed as discriminatory, when made by decision makers, give rise to an inference of discrimination and are not "stray remarks." *See Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir.1996). ("[C]ircumstances that give rise to an inference of discriminatory motive include actions or remarks made by decision makers that could be viewed as reflecting a discriminatory animus."). *See also Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 162–63 (2d Cir.1998) (finding evidence sufficient to support an inference of discrimination where discriminatory statements were made by decision maker and could be interpreted as a "company threat"); *Thompson v. Am. Eagle Airlines, Inc.*, No. 99 Civ. 4529, 2000 U.S. Dist. LEXIS 14932, at *15, 2000 WL 1505972 (S.D.N.Y. Oct. 6, 2000) (finding prima facie case based on remark by supervisor who made

6

decision to terminate because "a remark is not a 'stray remark' if it has a close nexus to an adverse employment decision")

Given that those who criticized Plaintiff's accent were decision makers involved in Plaintiff's claim, and who acted adversely against her because of her accent, an inference of discrimination is stated regardless of Defendant's justifications for their criticisms. Contrary to Defendant's assertion, courts of the Southern and Eastern Districts – including this Court - have found that similar allegations alone satisfy Plaintiff's burden. *See Liberman*, 926 F.Supp. at 1207–11. In *Boakye–Yiadom*, Judge Denis R. Hurley held that critical comments made by a decision-maker about the plaintiff's accent coupled with a negative performance review were sufficient to support an inference of discrimination. *See Boakye–Yiadom v. Laria*, No. 09 CV 622, 2012 WL 5866186, at * 5. The court went further, holding that "not only lends support to an inference of discrimination but also evidences discriminatory animus for purposes of showing pretext." *Id.* Similarly, in *Rivera*, in denying summary judgment, the court stated:

> Here there is some evidence that Mr. Negre was critical of Ms. Rivera's accent and that he had input into the decision to terminate her. If the jury credits this evidence, it could infer a discriminatory motive.

*Rivera v. Baccarat*, No. 95 Civ. 9478, 1997 WL 400119, at *4.

Even if Defendant's justifications were relevant to Plaintiff's *prima facie* case, they were not legitimate expressions of criticism. Defendant's supervisors repeatedly criticized Plaintiff because of her accent, explicitly so and without providing specific instance of communication-related performance problems. Defendant's lack of specificity simply cannot be reconciled with the requirement under the law that Defendants provide clear, detailed and honest criticism in order to justify dismissal, and instead betrays that the *accent itself is the problem* and not deficient communication skills. To this end, Defendant's business judgment is not immunized

7

against wholly misplaced or unnecessary criticism of Plaintiff's accent, even if Plaintiff alleges neither insulting nor degrading comments. *See, e.g., Boakye–Yiadom v. Laria,* No. 09 CV 622, 2012 WL 5866186, at * 8. (finding an inference of discrimination where criticism by decision maker suggested he perceived plaintiff's accent as negatively affecting his ability to perform).

Other courts have recognized that a vague and conclusory assertion of deficient communication skills raise questions of discrimination and the credibility of the decision maker which should be decided by a jury. Specifically, in *Altman*, the court determined that Defendant's stated reasons for termination, including deficient "pronunciation: - also provided as a reason for termination by Defendants in the instance case - were potentially probative of discriminatory intent notwithstanding the fact that her usage of English was directly related to her job performance. *See Altman v. New York City Dept. of Educ.,* No. 06 CV 63192007, WL 1290599 * 5. The court ultimately denied summary judgment since the intent of the decision maker was at issue and credibility conflicts and choices between conflicting version of facts were best left for a jury. *See United States v. Rem,* 38 F.3d 634, 644 (2d Cir.1994) ("Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment.").

Defendant instead insists that material issues of credibility, not the least of which being Defendant's assessment of Plaintiff's accent, are preempted by the unfettered discretion businesses maintain in making decisions on matters relating to their employees "communication skills" Defendant's position necessarily excludes *all* claims of discrimination attributable to an accent where the employer justifies a plaintiffs termination by criticizing "communication skills," regardless of whether or not those criticisms were made in good faith. This would eviscerate the objective standard announced in *Fragante* which requires an assessment of

8

whether or not the characteristic "materially interferes" with job performance. If this were the case, in every similar instance, employers would be free to to avail themselves of a complete defense before a fact finder has *actually heard the Plaintiff speak* sufficient to assess the credibility of defendant's assertions and plaintiff's capacity to be understood. *See Berke*, 628 F.2d at 981 (affirming plaintiff's judgment and factual finding of the district court because "the plaintiff's command of the English language is well above that of the average adult American.*").*

In support of its position, Defendant cites legal authority which is distinguishable for many reasons: (i) *every* opinion cited involves a defense motion for summary judgment and is therefore inapposite; (ii) none of the cases involve the direct involvement of an decision-makers in an adverse action, as is the case here; (ii) each opinion involves allegations of clear and specific performance-based criticisms relating to a defendant's legitimate communication-related concerns or other legitimate performance problems, which is not the case in Plaintiff's case, and (ii) none of the cases involve facts which challenge the credibility of the reasoning provided by the decision-makers. In each instance, the inference of discrimination is significantly impacted by facts which are not present here, including, in addition those mentioned, the "same actor" inference. *See Josma v. New York City Health and Hospital Corporation* 2012 WL 3861171 at *15 (E.D.N.Y. Sept. 5, 2012) In *Josma*, the court acknowledged that other facts undermined an inference of discrimination that otherwise may have survived. *Id.* ("Were there no other facts in this record, it might be a close question whether these two remarks would be sufficient to defeat summary judgment.").

Here, other factors exist which further support rather than undermine Plaintiff's claim of discrimination. Aside from making reference to Plaintiff's accent, Plaintiff's supervisors also explain their criticism in terms which are offensive, stereotyping and inconsistent, including

9

identifying Plaintiff's accent as presenting a "language barrier" and suggesting that Plaintiff's accent caused her to speak too fast. To the extent that Plaintiff was speaking fast, this is not a quality that is reasonably attributed to her accent. Nor does her accent present a "language barrier," a phrase which suggests a complete inability to communicate with others. And Plaintiff's final supervisor, after a half-hearted attempt at developing pretextual criticisms during a performance discussion, changed his objections telling Plaintiff that his concern was in fact her accent. Aside from presenting additional direct evidence of discrimination, the individual statements made by these supervisors express contradicting criticisms and further support an inference of discrimination. *See Scaria v. Rubin*, 117 F.3d 652, 654 (2d. Cir.1997); *EEOC v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir.1994) (noting that a juror can reasonably view an employer's changing explanations as "pretextual, developed over time to counter the evidence suggesting age discrimination"). Aside from being offensive and inconsistent, Plaintiff's supervisors' explanations are simply inaccurate. Significantly, courts have recognized that an employer's disregard or misjudgment of a plaintiff's job qualifications may undermine the credibility of an employer's stated justification for an employment decision. *See Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir.2001).)

## C. Plaintiff Has Presented Sufficient Evidence to Demonstrate Her Qualifications For The Promotions She Was Denied

Plaintiff's burden in demonstrating her qualifications for the promotions she sought is minimal and requires that she "show only that (s)he possesses the basic skills necessary for performance of the job." *See Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 92 (2d Cir.2001). Contrary to Defendant's assertions, the fact that Plaintiff has worked for Defendant's for more than 10 years in substantially similar positions than the ones she sought to be promoted to is

10

enough in itself to establish that she was qualified for the job. *See Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir.2001) ("[W]hen, as in this case, the employer has retained the plaintiff for a significant period of time and promoted her, the strength of the inference that she possesses the basic skills required for her job is heightened.") Instead of addressing this clear precedent, Defendant argues that she cannot allege a *prima facie* case because she "disagrees" with her employer's dissatisfaction. The reverse is actually true – Defendant is incapable of defeating Plaintiff's assertion of her qualifications merely by expressing dissatisfaction with her performance. *Chukwurah v. Stop & Shop Supermarket Co.*, 354 Fed.Appx. 492, 494–95 (2d Cir. 2009) (citing *Slattery*, 248 F.3d at 91. ( it is "error to find that plaintiff has not established a prima facie case merely because employer was dissatisfied with plaintiff's performance.").

While Plaintiff has clearly met this modest burden given her longevity with Geico, her Complaint provides additional evidence of her qualification, including the fact that she previously held positions within Geico which required strong communication skills and was commended for the same. While Defendant identifies case law which supports the assertion that evidence *of a prior employer's* positive assessment of a plaintiff's qualifications is not relevant to her present employer's qualifications, evidence of a plaintiff's qualification for a prior position *with the same employer* is relevant to her qualification for the most recent position. The Second Circuit has previously recognized this distinction, stating:

> Gallo's record, which revealed that she had previously served as Lear Siegler's Manager of Marketing Services, showed her qualified to assume a position requiring internal and external communication skills. Because plaintiff's burden of proof in an ADEA cause of action under the McDonnell Douglas/Burdine analysis is de minimis at this stage, we conclude, contrary to the district court, that plaintiff met her burden of establishing a prima facie showing of age discrimination.

11

*See Gallo v. Prudential Residential Services Ltd. Partnership,* 22 F.3d 1219, 1226 (2d Cir.1994). The same evidence also supports Plaintiff's assertion that her accent does not materially interfere with her ability to communicate, as her supervisors have suggested.

D.  **Defendant's Reliance on The Business Judgment Rule is Misplaced**

Rather than address Plaintiff's direct evidence, Defendant relies primarily on repeated assertions of the business judgment rule in defending the conduct of Plaintiff's supervisors. While an employer is permitted to make hiring decisions based on subjective criteria, the Second Circuit has that "an employer may not use wholly subjective and unarticulated standards to judge employee performance for purposes of promotion." *Knight v. Nassau County Civil Serv. Comm'n,* 649 F.2d 157, 161 (2d Cir.1981). As such, courts must allow employees "to show that the employer's demands were illegitimate or arbitrary," and, accordingly, an "employer's explanation of its reasons must be clear and specific" in order to "afford the employee a full and fair opportunity to demonstrate pretext." *Meiri v. Dacon,* 759 F.2d 989, 996-97 (2d Cir.1985). Furthermore, a subjective evaluation, besides being clear and specific, must also be honest (*Lieberman v. Gant,* 630 F.2d 60, 67 (2d Cir.1980)), a requirement which is repeatedly referenced even in the cases cited by Defendant. *See Meng v. Ipanema Shoe Corp.,* 73 F.Supp.2d 392, 399 (S.D.N.Y 1999) (noting that there is nothing improper about "an employer <u>honest</u> assessment of oral communication skills" of a candidate for a job).

Contrary to Defendant's assertions in it motion, Plaintiff has no quarrel with the business judgment rule and does not "disagree" with Defendant's internal business "decision" to consider Plaintiff's accent in deciding whether to promote her into an HR position; rather, Plaintiff, through a proffer of evidence which remains uncontested, challenges the truthfulness and credibility of Defendant's supervisors in providing multiple conflicting and purportedly benign

12

criticisms of her accent, which are either facially discriminatory, arbitrary or illogical. Defendant misapprehends Plaintiff's purpose in challenging Defendant's conduct – Plaintiff does not challenge the legitimacy of Defendant's hiring standards, including Defendant's legally permissible decision to consider Plaintiff's accent in making promotion decisions, but rather Defendant's supervisors' profound bad faith in exercising judgment while implementing these standards.

As a matter of unimpeachable appellate precedent, the business judgment rule does not insulate decision-makers from challenges to the credibility of the reasons provided for employment decisions. *See Byrnie v. Town of Cromwell, Bd. Of Ed.*, 243 F.3d 93, 107 (2d Cir.2001) *citing Chapman v. AI Transp.*, 229 F.3d 1012, 1048 (11th Cir.2000) ("[w]hile the business judgment rule protects the sincere employer against second-guessing of the reasonableness of its judgments, it does not protect the employer against attacks on its credibility."). *See Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 314 (2d Cir.1997); ("While we do not second-guess an employer's hiring standards, the reasons for its employment decision, including its alleged reliance on such standards, are subject to scrutiny under Title VII ..."). In light of the evidence of Defendant's bad faith, and given Plaintiff's clear qualification for the positions she sought, the business judgment rule is a nonissue.

## POINT II

## PLAINTIFF'S SECTION 1981 CLAIM BASED ON NATIONAL ORIGIN IS PROPERLY PLED

Plaintiff has properly pled a claim of discrimination under Section 1981. Courts routinely construe claims involving identical allegations to involve a complaint of discrimination based on ancestry which is protected by Section 1981. *See St. Francis College v. Al-Khazraji,*

13

481 U.S. 604, 613 (1987); *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir.1998), *See, e.g., Rumala v. New York City Transit Auth.*, 2005 WL 2076596, *8-*9 (E.D.N.Y. Aug. 26, 2005) (construing complaint as one of ancestry, as well as national origin, when plaintiff's claims included alleged discriminated based on an alleged accent); *Franchitti v. Bloomberg, L.P.*, 2004 WL 2366183, *2-*4 (S.D.N.Y. Oct. 20, 2004) (inferring that Section 1981 claim was based on ancestry when plaintiff's accent was one of the alleged bases for discrimination).

For the reasons set forth, Defendant's motion to dismiss for failure to state a claim must be denied.

DATED: February 11, 2013                    Stoll, Glickman & Bellina, LLP

                                            _____

                                            Christopher Q. Davis (CD-7282)
                                            Stoll, Glickman & Bellina, LLP
                                            475 Atlantic Avenue, Third Floor
                                            Brooklyn, New York 11217